IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHILO DAVIS SILVAS, JR.,

        Petitioner,            No. CIV S-07- 0030 GEB KJM P

    vs.

YATES, et al.,                  FINDINGS AND RECOMMENDATIONS

        Respondents.

_____/

        Petitioner is a state prison inmate proceeding pro se with a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his count one and count two convictions on double jeopardy grounds, and challenging his upper term sentence on count two as violating the Sixth Amendment.  Respondent has filed an answer and petitioner, his traverse.

I. Background

        Petitioner was charged based on three incidents occurring on the evening of September 16, 2002: a physical fight with Anthony Davis that resulted in Davis's lower orbital floor being fractured; a fire at Davis's home started by a molotov cocktail, allegedly made and thrown by petitioner; and a police chase of petitioner while he was driving under the influence, evading officers, and fleeing the scene of an accident after hitting a road sign.  Mem. P. & A. in

1   Supp. Pet. (Pet.) at 5-12.  At trial, petitioner argued that he fought Davis in self defense and

2   denied any involvement in the fire.  <u>See</u>, <u>e.g.</u>, RT 778-779 (defense closing).

3               Following a jury trial, petitioner was convicted of the following: count one,

4   battery with serious bodily injury (Cal. Penal Code § 243(d)); count two, assault by means of

5   force likely to produce great bodily injury and personally inflicting great bodily injury (Cal. Penal

6   Code §§ 245(a)(1), 12022.7(a)); count five, attempting to elude an officer by means of a vehicle

7   chase (Cal. Veh. Code § 2800.2(a)); count six,  failure to stop at the scene of an accident

8   involving property damage (Cal. Veh. Code § 20002(a)); count seven, driving under the

9   influence of alcohol (Cal. Veh. Code § 23152(a)); count eight, driving with a blood alcohol level

10   of .08 percent of more (Cal. Veh. Code § 23152(b)); and count nine, driving when privilege

11   suspended because of driving under the influence of alcohol (Cal. Veh. Code § 14601.2(a)).

12   CT 334-340; RT 959-960; <u>see also</u> Pet. at 2-3; Answer at 4.

13               The jury was deadlocked on two additional counts, counts three and four, so the

14   court declared a mistrial on those counts.  CT 357, 359, 361.  Count three charged petitioner with

15   a violation of California Penal Code section 12303.3, possession of a destructive device with

16   intent to injure, and count four charged petitioner with a violation of California Penal Code

17   section 451(b), arson of an inhabited structure.  CT 57.  Petitioner waived his right to a jury trial

18   for his prior convictions and allowed a court trial instead. RT 956-957.  At the bench trial, the

19   court found five separate, prior, prison terms and one prior strike allegation to be true (Cal. Penal

20   Code §§ 667(a), (b)-(I), and 667.5(b)).  RT 965, 978-981.

21               Petitioner was sentenced to twenty-one years and four months in state prison, in

22   accordance with the recommendation given in the Probation Department's report.  For count one,

23   petitioner was sentenced to six years, which included a prior felony conviction enhancement

24   under California Penal Code section 1170.12; this term was stayed under California Penal Code

25   section 654.  For count two, petitioner was sentenced to a term of eight years, which included a

26   prior felony conviction enhancement under California Penal Code section 1170.12, and a great

1  bodily injury enhancement, plus an additional three years under California Penal Code section

2  12022.7(a), because the injury occurred during the commission, or attempted commission, of a

3  felony.  RT 1022-1024.

4           Petitioner filed an appeal with the Court of Appeal of the State of California,

5  Third Appellate District.  Lodged Doc. No. 1; Answer at 4.  On January 3, 2006, the Court of

6  Appeal affirmed petitioner's judgment, but modified his sentence by staying count six based on

7  California Penal Code section 654.[1]  Lodged Doc. No. 6 at 13.  On February 14, 2006, petitioner

8  filed a petition for review in the Supreme Court of California, which was denied on March 22,

9  2006.  Lodged Docs. Nos. 7, 8.  Petitioner filed this federal habeas petition on January 5, 2007.

10 II.  Petitioner's Allegations

11          Petitioner alleges two errors in his sentence.  First, petitioner argues that the

12 double jeopardy clause requires that his conviction on count one, battery with serious bodily

13 injury, be reversed or vacated because it is a lesser-included offense of count two, which charged

14 assault with a great bodily injury enhancement, of which he also was convicted.  Pet. at 14-15.

15 Second, petitioner argues he was unconstitutionally sentenced to the high term on count two, in

16 violation of his right to have a jury determine the facts legally essential to his sentence under the

17 Fifth, Sixth and Fourteenth Amendments.  Pet. at 22-23.

18          Petitioner also appears to make some state law claims that are not properly before

19 this court, because the court cannot grant relief through a federal writ of habeas corpus on claims

20 arising under the California Constitution.  28 U.S.C. § 2254(a).  Petitioner argues the California

21 state constitution prohibits double jeopardy and the California courts have held that multiple

22 convictions may not be based on necessarily included offenses.  Pet. at 17.  Petitioner also relies

23

24          [1] On appeal, petitioner argued that section 654 precluded multiple punishments because
   when petitioner violated the laws identified in counts 5 and 6 his conduct was not divisible in
25 time or temporally separate and was committed subject to a single intent.  Lodged Doc. No. 3 at
   1-6.  The state appellate court agreed that petitioner's failure to stop after the accident was
26 incidental to his attempt to evade the officers following him.  Lodged Doc. No. 6 at 6.

1   on California courts' determinations holding that enhancements may not be considered for the

2   purpose of defining lesser-included offenses.  Pet. at 18.  Here as well, petitioner's arguments are

3   not cognizable as federal habeas claims.  Moreover, petitioner's arguments based on state law

4   already have been made and rejected at the state court level.  Answer at 2; Lodged Docs. Nos. 1,

5   3, 4 & 7.

6   III.  AEDPA Standards

7             An application for a writ of habeas corpus by a person in custody under a

8   judgment of a state court can be granted only for violations of the Constitution or laws of the

9   United States.  28 U.S.C. § 2254(a).  Federal habeas corpus relief also is not available for any

10  claim decided on the merits in state court proceedings unless the state court's adjudication of the

11  claim:

12        (1) resulted in a decision that was contrary to, or involved an
          unreasonable application of, clearly established federal law, as
13        determined by the Supreme Court of the United States; or

14        (2) resulted in a decision that was based on an unreasonable
          determination of the facts in light of the evidence presented in the
15        State court proceeding.

16  28 U.S.C. § 2254(d) (referenced herein in as " 2254(d)" or "AEDPA").  See Ramirez v. Castro,

17  365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief

18  under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth

19  Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538

20  U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did

21  not address the merits of petitioner's Eighth Amendment claim).[2]  Courts are not required to

22

23        [2]  In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals
      held in a § 2254 action that "any independent opinions we offer on the merits of constitutional
24    claims will have no determinative effect in the case before us . . .  At best, it is constitutional
      dicta."  However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain
25    relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees.  Title
      28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation
26    of the Constitution before he or she may obtain habeas relief.  See Lockyer, 538 U.S. at 70-71;
      Ramirez, 365 F.3d at 773-75.

address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d).  Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2000) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)).  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002), cert. dismissed, 538 U.S. 919 (2003).  Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision

1    was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  In other

2    words, the court assumes the state court applied the correct law, and analyzes whether the

3    decision of the state court was based on an objectively unreasonable application of that law.

4            It is appropriate to look to lower federal court decisions to determine what law has

5    been "clearly established" by the Supreme Court and the reasonableness of a particular

6    application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999).

7    IV.  Double Jeopardy (Ground One)

8            The Fifth Amendment's guarantee against double jeopardy protects a defendant

9    against a second prosecution for the same offense after acquittal, against a second prosecution for

10   the same offense after conviction, and against multiple punishments for the same offense.

11   Monge v. Cal., 524 U.S. 721, 727-28 (1998).

12           An offense is necessarily included in another offense when it is impossible to

13   commit the greater offense without also committing the lesser offense because of the overlap of

14   the elements.  Carter v. United States, 530 U.S. 255, 260 (2000).  The elements test is certain and

15   predictable because it relies on a textual comparison of the criminal statute for the alleged greater

16   and lesser-included offenses.  Schmuck v. United States, 489 U.S. 705, 720 (1989).

17           To determine whether the offenses are the same for double jeopardy purposes, the

18   courts use the Blockburger elements test.  Blockburger v. United States, 284 U.S. 299 (1932).

19   "The applicable rule is that, where the same act or transaction constitutes a violation of two

20   distinct statutory provisions, the test to be applied to determine whether there are two offenses or

21   only one, is whether each provision requires proof of a fact which the other does not."  Id. at 304.

22           Petitioner argues the double jeopardy clause requires that his conviction for count

23   one, battery with serious bodily injury, be reversed or vacated because it is a lesser-included

24   offense of count two, assault with a great bodily injury enhancement, of which he was also

25   convicted.  Pet. at 14-15.  Under Blockburger, the court compares the elements of count one and

26   count two to determine whether the offenses are the same.

1    For count one, the following elements must be proven: one, a person used

2    physical force against the person of another; two, the use of force was willful and unlawful; and

3    three, the use of force or violence inflicted serious bodily injury on the other person.  RT 670-

4    672; <u>People v. Brucker</u>, 148 Cal. App.3d. 230, 239 n.3 (1983).  For a conviction on count two,

5    the following elements must be proven: one, a person was assaulted; and two, the assault was

6    committed by means of force likely to produce great bodily injury.  RT 673-675; CALJIC 9.02.

7    Assault must be proven as follows:  one, a person willfully and unlawfully committed an act that

8    by its nature would probably and directly result in the application of physical force on another

9    person; two, the person committing the act was aware of facts that would lead a reasonable

10   person to realize that as a direct, natural and probable result of this act, that physical force would

11   be applied to another person; and three, when the act was committed, the person committing the

12   act had the present ability to apply physical force to the other person.  RT 673-674; CALJIC

13   9.00; <u>People v. Williams</u>, 26 Cal. 4th 779 (2001).

14       A comparison of the elements required for convictions under count one and count

15   two shows the offenses do not completely overlap.  Count one is not a lesser-included offense of

16   count two because it is possible to commit the alleged greater offense charged in count two,

17   without committing the alleged lesser-included offense charged in count one.  In particular, count

18   two requires an element of contextual awareness that is not necessary to convict on count one.

19   Count two requires great bodily injury while count one requires serious bodily injury; great

20   bodily injury is defined as significant or substantial physical injury, not minor, trivial or moderate

21   injuries, while serious bodily injury is defined as a serious impairment of physical condition that

22   includes, but is not limited to concussion, consciousness, bone fracture, a wound requiring

23   extensive suturing, serious disfigurement, and protracted loss or impairment of function of any

24   bodily member or organ.  <u>See</u> RT 671, 673-674.

25       The California Court of Appeal recognized a difference between the terms great

26   bodily injury and serious bodily injury in <u>People v. Taylor</u>, 118 Cal. App. 4th 11, 24 (2004).  The

7

1   court noted that while some courts have described the terms as being essentially equivalent,

2   (People v. Burroughs, 25 Cal.3d 824, 831 (1984)), or having substantially the same meaning,

3   (People v. Hawkins, 15 Cal. App. 4th 1373, 1375 (1993)), the terms have separate and distinct

4   statutory definitions.  Id.  In Taylor, the court gave the standard jury instructions on serious

5   bodily injury and great bodily injury. "(CALJIC No. 9.12 [defining serious bodily injury];

6   CALJIC No. 17.20 [defining great bodily injury].) These instructions provided different

7   definitions for the two terms, based on their distinct statutory definitions. Nothing in the

8   instructions given stated that serious bodily injury and great bodily injury are legally equivalent

9   concepts." Here, the judge also gave CALJIC No. 9.12 and CALJIC No. 17.20.  RT 623-624.

10          The defendant in People v. Perez, 182 Cal. App.3d 567, 568 (1985), was charged

11   with the same violations as petitioner in counts one and two, California Penal Code sections

12   243(d), 245(a), and 12022.7(a).  The court held that defendant's guilty plea to aggravated assault

13   (Cal. Penal Code § 245(a)) did not invoke the lesser punishment for felony battery (Cal. Penal

14   Code § 243(d)) because the elements for the assault and the battery differ.  Id. at 568-69.

15   "Felony battery includes only actual infliction of serious bodily injury (Pen. Code, § 243, subd.

16   (d)), while aggravated assault includes the additional (and more egregious) element of the use of

17   means of force likely to produce great bodily injury." Id. at 569.  See also People v. Parrish, 170

18   Cal. App.3d 336, 347 (1985) (stating § 243(d) is not the functional equivalent of §245(a) in

19   combination with §12022.7 because they do not have a complete identity of elements).

20          For these reasons, count one is not a lesser-included offense of count two, and

21   petitioner's conviction on both counts one and two did not violate double jeopardy.

22   V.  High Term Sentence (Ground Two)

23          California's sentencing standards were discussed and clarified in Cunningham v.

24   California, 549 U.S. 270 (2007).  Respondents argue that because a new rule of constitutional

25   law generally cannot be applied retroactively on federal collateral review to upset a state

26   conviction under Teague v. Lane, 489 U.S. 288 (1989), petitioner cannot be granted relief based

8

1  on Cunningham or Blakely v. Washington, 542 U.S. 296 (2004), cited in Cunningham.  Answer

2  at 13.  The Supreme Court has found that whenever the state raises the issue of retroactivity, a

3  federal habeas court must apply Teague before considering the merits of the claim.  Beard v.

4  Banks, 542 U.S. 406, 412 (2004).  The Teague "nonretroactivity principle prevents a federal

5  court from granting habeas corpus relief to a state prisoner based on a rule announced after his

6  conviction and sentence became final."  Caspari v. Bohlen, 510 U.S. 383, 389 (1994).

7          Under Teague, there is a three-step analysis: first, the date of the defendant's final

8  conviction is determined; second, the habeas court considers whether the rule is new; third, if the

9  rule is new, the court determines whether it falls into one of the two narrow exceptions to the

10 Teague doctrine.  O'Dell v. Netherland, 521 U.S. 151, 156-57 (1997).  If the rule is not new, then

11 the court applies the rule to the case, and does not need to proceed to step three.  See Butler v.

12 Curry, 528 F.3d 624, 633-34 (9th Cir. 2008).  Butler found that Cunningham did not establish a

13 new rule because it was dictated by precedent in Blakely and therefore could be applied

14 retroactively, making the third step unnecessary.  Butler, 528 F.3d at 634-35.  See also Alvarez v.

15 Clark, 2008 U.S. Dist. WL 4384242, at 5 (C.D. Cal. Aug. 28, 2008) (concluding that Cunningham

16 did not establish a new rule, but rather only applied Blakely, U.S. v. Booker, 543 U.S. 220, 233

17 (2005), and Apprendi v. New Jersey, 530 U.S. 466 (2000)); Butler v. Scribner, 2008 U.S. Dist.

18 WL 4542403, at 9 (S.D. Cal. Oct. 2, 2008) (stating that Cunningham did not establish a new rule).

19          As noted, petitioner's conviction was final on March 22, 2006, when the Supreme

20 Court of California denied review.  Blakely was decided in 2004.  542 U.S. 296.  Because Blakely

21 was decided while petitioner's case was on appeal, and not after his sentence became final, there

22 is no retroactivity problem to be protected against as counseled by Caspari.  As the court

23 determined in Butler v. Curry, Cunningham flows from Blakely, and does not establish a new

24 rule.  Because there is not a retroactivity problem posed by either Blakely or Cunningham, these

25 cases can be used when considering the merits of petitioner's claim without violating Teague.

26 /////

1    In Cunningham, court held that California's Determinate Sentencing Law (DSL),

2    which provides that an offense is punishable by one of three distinct terms of imprisonment -- an

3    upper, a middle, or a lower sentence--is unconstitutional because it gives sentence-elevating fact-

4    finding power to the judge instead of the jury, thereby violating a defendant's Sixth and

5    Fourteenth Amendment rights to trial by jury. Id. at 860-61. "[U]nder the Sixth Amendment, any

6    fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge,

7    and established beyond a reasonable doubt, not merely by a preponderance of the evidence." Id. at

8    863-64. California's DSL also was found unconstitutional because it allowed judges to impose a

9    high term sentence based on aggravating circumstances proven by facts found only by the judge,

10   which violates the rule of Apprendi requiring any facts that increase the penalty for a crime, other

11   than a defendant's prior convictions, to be submitted to a jury. Cunningham, 127 S. Ct. at 868;

12   Apprendi, 530 U.S. at 490. Apprendi does, however, allow for a narrow exception as set out in

13   Almendarez -Torres v. United States, 523 U.S. 224 (1998), which allows prior convictions to be

14   found by the judge based on a preponderance of evidence. Apprendi, 530 U.S. at 490.

15   In California, the middle term sentence is the statutory maximum sentence that a

16   judge may impose based only on the facts admitted by the defendant, or found by the jury, as

17   reflected in the jury verdict. Cunningham, 127 S. Ct. at 865. Apprendi and Booker also point to

18   the middle term, not the upper term, as the relevant statutory maximum specified in California

19   statutes. Id. at 871. In the wake of Cunningham, the California Supreme Court reaffirmed its

20   conclusion that a finding of a single aggravating circumstance makes a defendant eligible for the

21   upper term sentence. People v. Black (Black II),[3] 41 Cal. 4th 799, 813 (2007), cert. denied,

22   __ U.S. __, 128 S. Ct. 1063 (2008). "Therefore, if one aggravating circumstance has been

23   established in accordance with the constitutional requirements set forth in Blakely, the defendant

24   is not legally entitled to the middle term sentence, and the upper term sentence is the statutory

25

26   [3] The first Black case, which was vacated by the U.S. Supreme Court, appears at 35 Cal.
     4th 1238 (2005).

1    maximum.'" Id.  This court is bound by the California Supreme Court's interpretation of its

2    sentencing law.   Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

3            An aggravating circumstance is a factor that makes the offense distinctively worse

4    than normal, and includes the circumstances listed in the sentencing rules and those statutorily

5    defined.  Id. at 817.  California Rule of Court 4.421, cited in Black II, lists some circumstances in

6    aggravation, and includes both factors relating to the defendant's crime and factors relating to the

7    defendant himself. Black II, 41 Cal. 4th at 817.

8            At petitioner's sentencing in the superior court, the judge made count two the

9    principal term and imposed the high term sentence.  RT 1023. The judge explained that the high

10   term was being imposed "because the Defendant was on parole at the time of the offense, and also

11   the Defendant's prior convictions as an adult are numerous, and the Defendant's prior

12   performance on probation and parole have been unsatisfactory."  Id.[4]

13           Under Blakely, if the facts supporting petitioner's exceptional, high term, sentence

14   were neither admitted by petitioner, nor found by a jury, then the sentence violated his Sixth

15   Amendment right to trial by jury.  Conversely, if the petitioner did admit the facts used to support

16   the high term sentence, then it would not violate his Sixth Amendment rights.  The facts the judge

17   used to support the high term sentence were petitioner's being on parole at the time of the offense

18   and petitioner's prior performance on probation and parole.

19           While a jury did not find the facts the judge used to sentence petitioner to the high

20   term, petitioner waived his right to a jury trial on his prior convictions and agreed to a bench trial

21   instead.  RT 956-957.  At the bifurcated court trial, petitioner's prior convictions were proven and

22

23       [4] There is not a contradiction in the judge's statements that she relied on the petitioner's
     prior convictions, but did not rely on petitioner's prior prison terms in imposing the high term
         sentence.  Under Apprendi, a judge can rely on prior convictions.  The probation report shows
24   that petitioner had four prior convictions that did not result in prison terms; they occurred on
     January 9, 1988, September 5, 1991, July 15, 1996, and May 12, 2001.  CT 381-383.  The other
25   priors were used as sentencing enhancements and could not be used to justify the upper term in
     light of California's prohibition against dual use of facts.  People v. Price, 151 Cal. App. 3d 803,
26   815-16 (1984).

1  petitioner's attorney stipulated to the convictions, thus admitting them.  Answer at 4;

2  RT 970-976.  See, e.g., United States v. De Leon, 444 F.3d 41, 54-55 (1st Cir. 2006) (finding no

3  Blakely error when judge relied on facts stipulated to at trial).

4          Petitioner's attorney also stipulated that petitioner has not been free from

5  incarceration for any period of five years between any of his prior convictions dated July 24, 1986,

6  May 12, 1988, December 1, 1992, May 26, 1994, November 20, 1996, and the current conviction

7  in 2004.  RT 970.  After defense counsel conferred with petitioner off the record, the judge asked

8  petitioner if he understood his attorney's representation, and petitioner responded, "Yes, I do."

9  RT 971-972.  The judge then asked, "And is that the stipulation you're putting forth on the

10  record?"  Petitioner responded, "Yes, yes, I am." RT 972.  These stipulations establish petitioner's

11  performance on parole and probation.  Moreover, the probation officer's report offered as

12  People's Exhibit 101, which included further information on petitioner's conviction dates in

13  relation to his probation and parole terms and documenting petitioner's violations, was entered

14  into evidence without objection.  RT 976; CT 380-383.

15          The California Rules of Court identify the following as circumstances in

16  aggravation: "The defendant has served a prior prison term; ...The defendant was on probation or

17  parole when the crime was committed; and ... The defendant's prior performance on probation or

18  parole was unsatisfactory."  Cal. Rules of Court, Rule 4.421.  Under Black II, the existence of a

19  single aggravating factor is sufficient for a judge to impose a high term sentence after the Blakely

20  constitutional requirements have been met.  Here, there were multiple aggravating factors as noted

21  by the judge.  Petitioner served prior prison terms, was on parole at the time the crime was

22  committed, and performed unsatisfactorily during prior probation and parole terms.

23          The constitutional requirements were satisfied because the facts the judge used in

24  imposing a high term on count two were admitted by petitioner, and petitioner's prior convictions

25  were properly admitted under the Almendarez-Torres exception to Apprendi.  Because the

26  aggravating circumstances were established, the statutory maximum changed from the middle

1   term to the upper term.  <u>Black II</u>, 41 Cal. 4th at 812.  Following the state court's interpretation of

2   state law, including California's DSL, as prescribed by <u>Bradshaw</u>, petitioner's high term sentence

3   does not offend constitutional principles.  Because the standard allows the finding of a single

4   factor in aggravation sufficient to justify the imposition of an upper term sentence, the trial court's

5   reliance on petitioner's prior convictions, as set forth in the Pre-Sentence Report, would be

6   sufficient to support imposition of the upper term on its own.

7           Additionally, the Supreme Court has held that failure to submit a sentencing factor

8   to the jury in violation of the Sixth Amendment is not structural error and is subject to harmless

9   error analysis.  <u>See</u> <u>Washington v. Recuenco</u>, 548 U.S. 212, 222 (2006); <u>see also</u> <u>Brecht v.</u>

10   <u>Abrahamson,</u> 507 U.S. 619, 623 (1993).  Here, if the sentencing factors had been submitted to a

11   jury, the jury would have found the same thing as did the judge, beyond a reasonable doubt.

12           The District Attorney would have been in position to present as evidence the

13   information presented in the probation officer's report and recommendation, such as petitioner's

14   being on parole at the time of the offense, his prior convictions, and his unsatisfactory prior

15   performance on probation and parole.  The probation report identifies a total of nine prior

16   convictions.  CT 380-383.  A May 12, 2001 conviction resulted in three years of informal

17   probation that had not expired when the current offense occured on September 15, 2002.

18   Additionally, petitioner was given three years' probation for a prior conviction on January 9,

19   1988, but suffered another conviction for yet another incident occurring only a few months later,

20   on April 21, 1988.  CT 381.  Overall the record shows a conclusion that petitioner's performance

21   on probation was unsatisfactory would have been well-supported.  Any error was harmless

22   because a reasonable jury would have come to the same conclusion as the judge based on the

23   parties' stipulation.

24           Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a

25   writ of habeas corpus be denied.

26   /////

1    These findings and recommendations are submitted to the United States District

2   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3   days after being served with these findings and recommendations, any party may file written

4   objections with the court and serve a copy on all parties.  Such a document should be captioned

5   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6   shall be served and filed within ten days after service of the objections.  The parties are advised

7   that failure to file objections within the specified time may waive the right to appeal the District

8   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9   DATED:  February 3, 2009.

10

11   _____

12   U.S. MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26  /jb
    /silv0030.157